UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | CRIM NO. 1:13-cr-00782 |
| v. | : | **OPINION** |
| DERRICK WARNER, | : | |
| Defendant. | : | |

This matter comes before the Court on Defendant Derrick Warner's Motion for Companionate Release under the First Step Act 18 U.S.C. § 3582 (c)(1)(A)(i) [Dkt. No. 41.] The Court has considered the parties' written submissions, and for the reasons stated below, will deny Defendant's Motion.

Defendant Warner pled guilty to a two-count information—one count of conspiracy to commit bank fraud and a second count of felon in possession of a firearm—on December 11, 2013. On August 13, 2015, the Honorable Jerome B. Simandle sentenced Defendant Warner to eighty-seven (87) months in prison and five (5) years of Supervised Release. He is currently serving his sentence at FCI Elkton. Defendant Warner is an African American 36 year old male, projected to be released on March 18, 2021. Accordingly, he has approximately two months remaining on his sentence. Prior to filing this motion, Defendant Warner, through counsel, applied to the Bureau of Prisons ("BOP") for compassionate release. [Dkt. No. 41-1, p. 27.] Defendant filed this motion more than 30 days after counsel's submission; Warden Williams has not responded to Defendant's request. [Id.]

1

Defendant Warner seeks to modify his sentence to time served in order to protect himself from the Covid-19 pandemic. He argues that he is "medically vulnerable" at an elevated risk of death or serious illness if he were to become infected with Covid-19 due to his chronic kidney disease and nephrolithiasis, and overdue for a surgery to remove kidney stones, which he frequently suffers from as a result of his kidney problems. The Government opposes Defendant's motion. It argues that Defendant Warner already tested positive for Covid-19 in mid-July 2020, and recovered from the illness. In addition, the Government contends that the § 3553(a) factors supporting Defendant's continued incarceration outweigh those supporting release.

I.  Legal Framework

Generally a district court may not modify a term of imprisonment once it has been imposed, unless the case falls under one of the limited exceptions under the First Step Act. Pursuant to the Act, a court may modify an imposed term of imprisonment—

**(1)** in any case—

**(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

**(i)** extraordinary and compelling reasons warrant such a reduction; or

**(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the

>    Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> **(B)** the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582(c).

The Sentencing commission issued a policy statement concerning reduction in term of imprisonment under the Act, which provides in pertinent part, that after considering applicable factors set forth in 18 U.S.C. § 3553(a), the "the court may reduce a term of imprisonment if the court determines that—Extraordinary and compelling reasons warrant the reduction . . . The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and The reduction is consistent with this policy statement." U.S.S.G. 1B1.13. As set forth in the policy statement, the medical condition of the defendant may qualify as an extraordinary and compelling reason, if the defendant is suffering from a terminal illness or

(ii) the defendant is,

   **(I)**   suffering from a serious physical or medical condition,

   **(II)**  suffering from a serious functional or cognitive impairment, or

   **(III)** experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Additional circumstances that may qualify include, the age of the defendant, family circumstances, and other reasons. Id.

## II.   Analysis

There is no dispute that Defendant Warner is eligible for consideration of his compassionate release motion by this Court. Thus, the question before the Court is whether extraordinary and compelling reasons warrant his release. The Court finds that Defendant Warner is ineligible for early release.

Defendant's motion requests "compassionate release so he avoids the rampant Covid-19 rife within FCI Elkton, receives overdue treatment, practice social distancing and achieve appropriate levels of hygiene to protect himself from an infection that would prove catastrophic if contracted." [Dkt. No. 41, p. 4.] Defendant Warner claims that he is more vulnerable to Covid-19 because he suffers from chronic kidney disease. While "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," an inmate with a medical condition that increases risk for severe illness from Covid-19, may qualify as an extraordinary and compelling reason. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (citing Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp.); see also United States v. Hynes, No. 3:18-CR-00222, 2020 WL 6060984, at *3 (D.N.J. Oct. 14, 2020). According to the CDC, "[h]aving chronic kidney disease of any stage increases your risk for severe illness from COVID-19." *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 4, 2021). Under

these CDC guidelines, Defendant Warner's BMI of 30 also presents a medical condition putting him at increased risk.  Id.

Defendant further submits that "Elkton has suffered one of the largest outbreaks of Covid-19 within its confines of any B.O.P. facility[;]" and this has caused necessary surgery for Defendant's condition to be postponed.  [Dkt. No. 41, pp. 3, 7.]  The Court notes that a group of prisoners commenced a class action in the Northern District of Ohio against FCI Elkton's Warden, alleging "that their confinement in the midst of the COVID-19 outbreak violates the Eighth Amendment."  Wilson v. Williams, 961 F.3d 829, 835 (6th Cir. 2020).  Ultimately, the Sixth Circuit "conclude[d] that petitioners [did] not provide[] sufficient evidence to show that the BOP was deliberately indifferent to the serious risk of harm presented by COVID-19 at Elkton."  Id. at 844.

Here, Defendant Warner, while vulnerable under CDC guidelines, has already been infected by COVID-19, and recovered from the virus.  Accordingly, the Government concedes that Defendant's medical conditions could present "extraordinary and compelling" reason for a sentence reduction, but claims that "[b]ecause defendant has tested positive for COVID-19, suffered no apparent ill effects, and is considered to have recovered, the risks and dangers associated with COVID-19 are therefore not grounds for the relief he seeks."  [Dkt. No. 44, p. 8.]  Although this Court takes seriously Defendant's kidney malfunction, a number of courts have found that an inmate recovering from the Covid-19 virus weigh against release based on the risk of contracting that virus.  United States v. Ramirez, No. CR 09-579, 2020 WL 6743327, at *3 (D.N.J. Nov. 17, 2020) ("The fact that the Government introduced evidence that Defendant does not appear to be suffering any known complications or experiencing any significant symptoms of the virus counsels against a compassionate release."); United

5

States v. Mekaeil, No. 16-10016-02, 2020 WL 6318693, at *3 (D. Kan. Oct. 28, 2020) ("[I]t does not appear that [defendant] had medical complications from already having COVID-19, thus diminishing any concerns that she will or would develop severe complications if she were to contract it again."); United States v. Hartley, No. 513CR00046, 2020 WL 4926146, at *4 (W.D.N.C. Aug. 21, 2020), reconsideration denied sub nom. USA v. Hartley, No. 513CR00046, 2020 WL 5550394 (W.D.N.C. Sept. 16, 2020) ("Other courts have held that the possibility of re -infection does not constitute extraordinary and compelling circumstances." (collecting cases)). Importantly, in this case, the BOP's records do not indicate the defendant suffered from symptoms while infected with the virus. [See generally Id. (Defendant's BOP medical records for July 2020). Records indicate that following Defendant's positive Covid-19 test, his temperature was monitored daily, from July 14, 2020 to July 26, 2020—it never measured above 99 degrees. [Dkt. No. 46, p. 10.]

Moreover, while this Court recognizes the conditions of incarceration may generally "make prisons potential 'hot spots' for virus transmission," FCI Elkton now has relatively low infection rates. See COVID-19 Coronavirus, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited January 4, 2021) (providing COVID-19 data for each BOP facility, showing FCI Elkton has 3 positive inmates, 22 positive staff members, with over 800 staff and inmates recovered). Therefore, the possibility of Defendant's re-infection does not qualify as an extraordinary and compelling circumstance. To be sure, even if this Court were to release Defendant Warner to a relative's home in Audubon, New Jersey, as he proposes, there is no

evidence that Defendant Warner would be less likely of re-infection upon release rather than at FCI Elkton.[1]

Finally, the Government argues that § 3553(a) factors and safety of the community do not support Defendant's sentence reduction.  The Court Agrees.  Defendant was involved in a scheme, in which he and others stole checks from the United States Mail and converted those checks for his own use.  Defendant also purchased and possessed a firearm although he had been convicted of a crime punishable by imprisonment for more than one year.  At sentencing, Defendant Warner accrued two (2) criminal history points and was sentenced to 87 months—<u>the bottom of the advisory guidelines range of 87 to 108 months</u>.  While incarcerated, Defendant Warner has acquired four (4) disciplinary infractions.  [Dkt. No. 46, Ex. B.]  Thus, the need to promote respect for the law and the need for deterrence further weigh against his release.

---

[1] New Jersey, and specifically Camden County, reports relatively high numbers of Covid-19 cases.  <u>See</u> *Covid-19 Update: Cases, Trends; Hospital Census & Cases by County*, SOUTH JERSEY OBSERVER, https://www.southjerseyobserver.com/2021/01/06/covid-19-update-cases-trends-hospital-census-cases-by-county/ (last visited January 7, 2021).

III.     Conclusion

For the foregoing reasons, Defendant's Motion for Compassionate Release, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), will be denied. An accompanying order shall issue.

Dated: January 8, 2021

                                                /s/ Joseph H. Rodriguez

                                                JOSEPH H. RODRIGUEZ, USDJ